Good morning, Your Honors. I'm Janice Mazur. I'm representing the appellant, Gigi Castillo. And I'd like to reserve about five minutes of my time for rebuttal. I think that there were two critical errors that the district court made in reviewing this case and in granting the summary judgment. And the first was that the district court, I believe, misunderstood the holding of the Morgan case, which was a new case at that time. Holding which case? I'm sorry? Pardon me? I didn't hear what you said. The Morgan case, the Morgan National Railroad, as it relates to the hostile work environment claim. And I believe that the court misinterpreted that Supreme Court decision and thought that it could not consider any acts which predated the 300-day limitation period. And I think that the appellee has now conceded, and I think it's clear from Morgan itself and the subsequent cases interpreting it. You have to keep your voice up for a moment. I'm sorry. I think it's clear from the appellee's concession, from Morgan itself and the subsequent cases that have interpreted it, that prior acts outside of that limitations period are admissible and may be considered by the court as background evidence. From whence do you conclude that with regard to the hostile environment claim as opposed to the nonpromotion claim that the district judge didn't understand Morgan? I think that the district court's decision indicated that as far as the hostile environment claim, that it was going to be limited to looking at the situation as it then existed, and basically what she looked at was what was going on in 1999. And she said, and the Court said, oh, well, the only evidence that was ---- Where do you have ---- I don't see that. Could you show me where? I see her saying that she's not going to consider the discrete acts with regard to the hostile environment claim, and my understanding is ---- That's correct. And I think ---- That's a different point than the one you made before. And I believe that what she looks at in terms of the hostile environment is just saying, well, there was some criticism of Mrs. Castillo's work by Ms. Cooper in 1999 or thereabouts, and she seems to rely on that as being the only grounds for the hostile environment. She doesn't go back in her discussion of hostile environment and look at the whole history of the environment in that office over a period of years, which I think is relevant to what happened in 1999. I believe that the second mistake, and it's a really ---- Let me just be clear. Are you claiming that she didn't look at the other issues such as the behavior of people and the way people were treated, or that she simply didn't look at the particular discrete acts about promotion and so on from prior period? I don't think that she looked at either one of them for ---- Well, I'm asking you where you get the first one from. I understand where you're getting the second one from, but I don't know where you're getting the first one from. And ultimately this doesn't matter because at summary judgment we have to do it ourselves, right? So it doesn't really matter. Well, that's correct, Your Honor. And I think ---- Oh, yeah. We'll get to that as well. I believe that that has to be ---- because there are a lot of discrete acts. I do believe it has to be remanded on several different ---- All right. So why don't we concentrate on that instead of what the district court did right or wrong? Pardon me, Your Honor. So why don't we concentrate on that instead of what the district judge did right or wrong? Okay. On the hospital environment, discussion is at 628 through 629 of the record. And the court basically looks at the ---- on page 629, the harassing behavior cited by Castillo does not rise to the level required. And she talks about the fact that there was a question of whether Ms. Cooper, the supervisor at that time, was unreasonable in how she reviewed Ms. Castillo's work. And that's most of what she looks at for the hospital environment claim. It doesn't go back and look at either discrete acts or the environment in the office, which was described, you know, as very, very difficult. The other thing that I think is a problem ---- Was it on the basis of race or sex? I think ---- well, obviously, I think the record makes it clear that there was discrimination on just about every minority or every protected class that existed in that office, race, sex, sexual orientation, handicap. There was a lot of discrimination going on. I don't ---- But the latter who don't qualify under the statute, do they? Right. I think that for purposes of this appellant's claim, the primary focus has to be on the retaliation and on the hospital work environment in general, that it was just an unworkable environment. Yes, but I was asking about hospital work environment. It really has to be under race or sex, doesn't it, or else ---- I think that there's two cases, two recent cases decided by this Court since the briefing that sort of address those issues, Your Honor, and I'd like to talk about those. Those are the Porter case and the McGinst case that have been decided recently, and they discuss what is a hospital work environment. The McGinst case, which was decided in February of 2004, describes a hospital work environment as an environment where there's repeated derogatory or humiliating statements that can pollute the workplace, making it difficult to take pride in one's work. And the case holds that a workplace should be free of discrimination, intimidation, ridicule and insult. I would read that to understand that discrimination can be any kind of discrimination against a protected class, including retaliation. Yes, a protected class. Right. That's what I'm asking you. Okay. What's the protected class? The protected class is people who exercise their constitutional rights in terms of ---- and have a right not to be retaliated against. What case law do we ---- you're basically arguing for a hospital environment based on retaliatory motive. Right. And what's the case law supporting that? Well, I think that the Porter case talks about that. The Porter case, by the way, also precludes your other theory because it says quite distinctly that you can't rely on prior discreet acts with regard to a present hostile environment claim. Well, it says that you can rely on them as evidence of the surrounding circumstances. Right. But not as part of a hostile environment claim. Well, I would read the case to say that ---- and the Morgan case to say that I think discreet acts, as well as nondiscreet acts, can be used to establish a hostile work environment claim. They're not independently ---- the discreet acts are not independently actionable. But I think that any prior history can be relevant so long as it is ---- Claims of an allegedly hostile environment are to rise to the level of an actionable claim. They must do so based on the view of timely nondiscreet acts. I believe that's true to make it a separately actionable cause of action. In other words, you can't go ---- I'm sure they can't, but that's what it says. I understand, Your Honor. Even if we just focus on the nondiscreet acts, I think that there is a clear link here. And what we have to look at ---- But you were going to tell me how Porter supports your retaliatory mode of hostile environment claim. Well, I think that the record makes it pretty clear that Mrs. Castillo had exercised her ---- But I asked a different question, which is what authority do you have? And there may exist, but I don't know what it is, for having a hostile environment claim based not on race or sex or any protected class, but on a retaliatory motive. I think that that can be inferred from the McGinn's case, which was decided by this Court in February. And it talks about a workplace ---- it's talking about a hostile work environment should be free of discrimination, intimidation, ridicule and insult. I certainly think that intimidation, that when somebody is being retaliated against for exercising constitutional rights, that constitutes intimidation. Now, I think that a person who exercises protected rights falls within the protected classes that are envisioned by Title VII. And I think that just the same as racial discrimination or sex discrimination, I think discrimination against somebody who's exercised a protected right falls within the gamut and the contemplation of that statute. And I think that's what ---- part of what this Court was talking about in these two more recent cases. In the ---- both of these cases remanded to the district court for consideration of past acts which raised a reasonable inference of hostile work environment and or discrimination or retaliatory environment. I think that the issues of retaliation and hostile work environment are very ---- can be and are in this case very closely related. In the Porter case, the Court made it clear that even though there had been very little actual ---- very little harassing conduct within the time frame of the limitations period after 1998, there had been a little bit. But they were able to go back and link that and say, yeah, but you can go back and look at what happened in 1995 and 1996, even though that conduct is ---- Kagan. What I'm having trouble with is why are you calling this a hostile environment claim? I mean, you have a nonpromotion within the statutory time period. And the question ---- and you're claiming that that was illegal based either on some protected class, which you seem to think is ---- agree is a little flimsier. Retaliation. On retaliation, right? So why ---- what does the hostile environment claim have to do with any of that? I mean, why are you simply standing up here and telling us what that nonpromotion claim is and what the evidence to dispute, to show that there was a pretextual determination as to why it was done and use all the past evidence to support your sense of motive? But what does hostile environment have to do with any of this? Well, I think that it could be ---- it can be looked at as two independent claims. I mean ---- All right. So what is the hostile environment claim? The hostile environment claim is that, in looking at the definition that we just looked at in the Porter case, that there was an ---- and if there was ever a hostile environment anywhere in the world ---- Well, it was hostile, but as Judge Huck has been asking, why was it hostile based on some protected ---- it seemed to have been a very unpleasant place to work. Absolutely. How does any of that hook into any of her protected categories? I think the ---- I apologize. I forgot to turn my phone off. The ---- Oh, it's your phone. I think it is. I was wondering. I'm sitting here wincing every time it goes off. I think that the entire environment within this office was ---- Well, very unpleasant. ---- permeated ---- A miserable, terrible place to work. Absolutely. What does that have to do with ---- But it was not only unpleasant in the sense that, geez, I don't want to get up and go to work today because everybody is nasty and everybody is grumpy. It had to do with a pervasive atmosphere of discrimination against minorities, against people who exercise their protected rights, against all these different protected groups. All right. What happened within the time period other than this nonpromotion that is relevant to what you're calling a hostile environment claim? Well, the nonpromotion is what happened within the time period. Nothing else. Small things. And that's my reading of the record. Right. Small things that happened. Nothing of any significance. Small things that happened that are significant only if you look at the history. And that's, I guess, why I'm trying to make this connection between the history of what had to do with my client as well as other people in the office, although I'm certainly not trying to, you know, push any claims that they might have. But to say that, you know, you can do this ---- Well, why are you ---- For what reason, conceptually, is it either to your advantage or helpful to us to not simply focus on the nonpromotion using any other evidence as informative of the motive? I'm having a hard time. It seems to me you have a hard hostile environment claim because ordinarily, quote, discreet acts like nonpromotions are dealt with on their own hook, not as part of a hostile environment notion. I don't see what advantage it gets you. I don't know what it gets you to be calling it a hostile environment claim. Well, I view them as related, but if Your Honor is suggesting that, I should just stick with the nonpromotion claim. No, but just help me understand why. I'm not saying that you're wrong to be dividing them, but I'm not understanding why you're doing it. Well, I think my focus there is because the district court, it seems to me, failed to understand. The district court failed to understand the Morgan holding that says even though these claims might be out of time, you can still look at them as evidence. And I think that alone would require a remand because in order to determine whether there was in fact a hostile environment, I think these are factual questions. Why is it a remand or a summary judgment? Well, I think that there's a lot of disputed facts. The appellee's brief went on to say this. Right. So you mean a remand for trial, not for a remand to reconsider the summary judgment. It shouldn't have been a summary judgment in the first place, and I think the Court didn't understand and didn't engage in the weighing process that is required by the case law to determine whether or how relevant is this evidence, which of this I don't think is provident. Well, you mean that's a lot of time. What about the failure to promote? Okay. And the failure to promote, Your Honor. I see where Clarence Thomas ruled in your client's favor. He absolutely did, Your Honor. And my client has a very hard time understanding how we could be where we are now after there was a finding of actual racial discrimination. Of course, that happened years ago. She pursued that claim. It was ultimately dismissed on somewhat different grounds, not that there was a final racial discrimination, kind of an upside-down racial discrimination, as it were, based on the fact that she was not black. But in 1999, this was, I would submit, just another indication that this woman was not going to be promoted to the G-13 level because of retaliation on the part of the supervisors. And I think what happened is the district court just looked at what happened in 1999, and then she said, okay, well, they promoted Joyce Cooper. And here the government has or the EEOC has proffered facially nondiscriminatory reasons for her promotion. They've got this glowing memo about how wonderful she is. All right. And your client has an alternative explanation for why Joyce Cooper was promoted. Right. But that reason isn't really a discrimination reason, a discrimination against her. It's a reason that says that they're not telling the truth. She wasn't really better than they. Instead, they were trying to assuage her for her prior – her own prior charges. But how does that advance your client's ultimate burden? I think it does. It's still factual harassment, essentially. I mean, it's sort of a – it sort of relates to the Clarence Thomas finding that the Court just mentioned. In that case, just hearkening back to that for a moment, the final decision was that my client had been discriminated against not because she was Filipino or not because of her race or some other protected class, but because she wasn't a member of a class that was being wrongfully preferred. In that situation, they said that the director of the San Diego office, who was black, was purposefully recruiting black people for that position and thereby excluding non-blacks. So is that your claim here? No. Well, it's a similar sort of a claim. In this case, we're saying that they provided favorable treatment to a woman who – You're saying pretext, aren't you? Pretext, exactly. Well, why don't we get to that? That's what really is. We're saying in applying the prima facie case and the reason given by the employer, you're saying there's a question of fact as to pretext. As to pretext. And I think that we've raised a very strong, reasonable inference at least of pretext because here she had – Miss Cooper had prepared this lengthy, scathing, detailed declaration about all the wrongdoing and particularly the sexual harassment that was going on by Mr. Matarazzo in that office. And then, boom, she's promoted and all of a sudden she retracts it. Now, I know that there's an issue. They say, oh, well, that charge, the sexual discrimination charge, was dismissed sometime before as untimely. That's an issue of fact. That's an issue of fact. And also, even if that's true, the allegations were still out there. And there were other sexual harassment claims against Mr. Matarazzo as well. Okay. So could you explain again how this hooks up to your clients? My client was denied her right to a promotion because they were giving favorable treatment to somebody in exchange for quid pro quo dropping of her sexual harassment claim or recanting her allegations. And therefore, that discriminates against your client on the basis of? Yes, Your Honor. Of what? Sexual discrimination. Why? I'm having a hard time with that. Sexual or? Retaliation. Or retaliation. Or un-retaliation. I mean, it seems to me what it may do is prove that they were liars. So maybe that gets you someplace. But I'm not sure how the particular – and I think it probably does get you someplace. But how the particular reason you're ascribing, I don't see how it helps. If they gave preferential treatment to someone on the basis of an illegal factor, which is sexual harassment, in this case, her willingness to drop her allegations of sexual harassment in exchange for quid pro quo. It's not sexual harassment. It's buying her off or something. Pardon me? It's buying her off, but it's not. Buying her off, right. But essentially, they are giving favorable treatment to someone based on improper factors. What is she claiming? I have the same problem as Judge Burson is that what is the basis of her discriminatory claim? Discrimination against her. She wasn't. Not that somebody else was giving preference, but rather, what was the discrimination against her on the basis of being in a protected class? I guess it's a little bit inside out from that, but I think it is very analogous to this whole thing about, well, you weren't chosen because you're not black. You weren't chosen in this case because we had to buy off this woman with a sexual harassment claim. All right. You weren't chosen because she wasn't black or also are you alleging retaliation? You weren't chosen because of retaliation? Absolutely. I think retaliation has a lot to do with it as well. Isn't that the answer that we're looking for? And you said there's a pretext for the reason the employer gave about why Miss Cooper was such a great person. You're saying that's pretext and they're factual questions. That's absolutely. It's factually incredible that after the scathing allegations that she made against Mr. Matarazzo, he'd come back with this wonderful. All right. You've got 25 seconds. You want to save that? I think I'll save that for my rebuttal. Thank you, Your Honor. Thank you. You're not related to Janet Levine, are you? You know her? No. She's a great lawyer. You ought to meet her. Well, hopefully I can live up to that as well. May it please the court. My name is Beth Levine. I'm an assistant U.S. attorney, and I'm here representing the government appellee. I think that based on the questions that were asked of opposing counsel, that what's really important here is to look at what the issue is that was presented in the opening brief. And that issue actually was, in essence, whether there was a hostile work environment. And so I therefore question whether, in fact, there are two claims here, whether perhaps she's even waived the claim of the nonselection. She's talking about the hostile work environment. Well, she seems to be calling – I mean, it's really a verbal problem. I mean, as far as I can tell, she's calling the nonpromotion of the hostile work environment. For some reason, everybody seems to like sexual harassment or harassment-type language over the more traditional Title VII language. But, I mean, when you get to the merits of the brief, that's what she's talking about, at least in large part. Well, in effect, what she does is she just tries to package everything into one omnibus claim. And, in effect, I would call this the spaghetti approach. And I would certainly say, and I think as the Court has indicated, that under Morgan and the Ninth Circuit case law, she can't have it that way. And I think also what she's trying to argue is that she was subjected to a hostile work environment from the beginning of her career, but really what she's saying is, I've continued to be unhappy with various discrete acts over the past 20-plus years. The only reason any of this matters a lot is because of what you would get damages for if you won. Right? In other words, let me be more specific. You look perturbed. The question is, if she does have one major discrete act within the time limitation period, the nonpromotion, Morgan says that you can rely on earlier things, earlier incidents as evidence of a motive within a time period. It also says that for a hostile environment claim, you can essentially rely on the whole chain of events, if it's a hostile environment claim, presumably then getting damages for, not just for what happened over the time period, but for the whole chain of events. And that seems to be the difference. So if it's a hostile ‑‑ but then she says quite distinctly in her brief that she's not trying to do that. She's only trying ‑‑ she's not trying to use it for purposes of changing what the relief would be. She's only trying to use it as evidence. So it seems that we're really into an evidentiary question and not an attempt to pull back into the prelimitations period the wrong. Do you disagree with that? Well, I think that she's going back and forth as ‑‑ All right. Well, let's assume that's what she's legitimately doing, okay? And let's really ask the question of what does ‑‑ did the district court decline to use the prior evidence either to inform the mode of analysis or to inform a hostile environment analysis? And if we use that evidence, as Morgan seems to say you can, where are we? Well, actually I think that the district court did indicate that it was considering prior evidence. It talked several times about what the conditions were in the San Diego area office under Pat Matarazzo. And I think that there's ‑‑ But with respect to the pretext analysis, with respect to the promotion and the fact that you came up with this neutral reason and she comes in and says, no, that's not the reason, and she has this one theory about why Joyce Cooper was promoted. But she also has a bunch of incidents from the past which she says demonstrate that there were either retaliatory or other illicit motives operating in this workplace in general. Well, again, I think she's trying to apply the spaghetti theory. And I do think you do have to look, and even as the court of appeals, you have to look at what is in the hostile work environment if you're looking at it as a hostile work environment. Before you start getting to all these other things that might be ‑‑ Suppose we're not looking at it as a hostile work environment. Suppose we're looking at it as a promotion discrimination claim. Is it not relevant to the pretext analysis that she is coming forward with the fact that she was found to have been discriminated against or she claims to have been discriminated against earlier? Actually, I don't even think that's relevant. You have that decision. It's from 1981. Well, that's one. But she has other things. She has other things that she claims prove that she was called a troublemaker and she was ‑‑ things were done to her. That's her claim. And if you look at all of these things, where, and I continue to question this, where is the basis of a prohibited factor under Title VII? She keeps on talking about a hostile work environment. But, and things were unpleasant in the office. And you have a lot of people talking about how things were unpleasant in the office. But what do you have? You have a bunch of claims by a number of people in the office that, you know, talk about things like we didn't like the furniture. We couldn't talk to each other. We had managers yelling up and down the hall. We had the supervisor rewriting our memos. These are not things that are anything based on a prohibited factor. And I think that that's really what this case comes down to. She's got a lot of stuff out there. And where do you end up? And I think that even as a court of appeals, you can look at that. You have the record before you. And what does she have? She has a bunch of complaints over a number of years. And all she can say really is it was an unpleasant environment. And to the extent that she's talking about things that are directed specifically to her, she mentions an interaction with Joyce Cooper, which actually happened after the nonpromotion. But even if you assume that it did happen before, and I think that she says that there was some dispute as to that. But that doesn't matter because if you look at that interaction and you have the memos in the record, what you have is a back and forth between supervisor and the employee. And managers have to be able to interact with their employees. Was there any indication that the ‑‑ I'm looking at the discrimination against her. Was there any discrimination based on race or sex or retaliation? Not anything that I can see in the record, and neither did the district court. You have ‑‑ she's saying that all of this came from this discrimination that occurred in her not being transferred in 1981. No, she's not saying that. My understanding, let's suppose this was her case. First you agree with regard to the promotion that she made out of prima facie case, right? Well, I don't think that there's sufficient evidence that she's presented to create an inference that there was discrimination. But if we get past that. Okay. So then you come up with this explanation. And she puts on evidence that says that that's not why you promoted Joyce Cooper. You promoted her because you were trying to buy her off essentially. Now, let's ‑‑ is there ‑‑ there are two questions about that evidence. One is, is there sufficient evidence to create a material fact with regard to that motive? And the second of this, does it get her any place? So what's your comment on that? With regard to that, again, I don't think that there's anything in the record that supports that contention. The only thing that she really presents as far as pretext is this, as you say, this buying off of Joyce Cooper. But she also ‑‑ okay, go ahead. And what does she present? She has a log that actually it's not even clear as to what that ‑‑ she doesn't identify as to what that log pertains. But the dates in there are March of 1994. If you look at her sexual harassment claim, that is, Cooper's sexual harassment claim, that was filed a year before. It was dismissed as untimely. The time passed for Joyce Cooper to proceed. And here you are, you're months later when she, that is, Cooper, gets appointed to be a supervisor. And the only thing that that log could possibly pertain to was a performance evaluation. And she's talking about not even that, that promotion in 1994. But she's talking about 1999. We're talking about six years later. But I think that it really defies any kind of, you know, reasonable consideration here. And certainly I don't think any jury could reasonably conclude that one thing had anything to do with the other. So I would say ‑‑ Suppose we thought, and I don't know if I did, but suppose we thought that there was, however, sufficient evidence on the question of whether this past history with respect to Joyce Cooper hooked up to the reason for her promotion. Is that pertinent to your, to whether there was a, to her discrimination claim with regard to the current promotion? Meaning, if she has proved, suppose she's proved that the employer is lying with regard to why, that they didn't really think Joyce Cooper was so wonderful. They just had some commitment to continue to promote her. How does, is that pertinent to her proving pretext and, therefore, getting by summary judgment? Well, again, I would say no. And also I might also mention that in the district court she didn't even argue that there was pretext. But you can't look at that and say that the employer did not honestly believe that Cooper had the better interpersonal skills and that she was the choice that they made for that position. I don't think that there's anything there. I'm asking a different question. I'm asking a different question. Let's assume that we did think that there was a tribal issue. A factor in that question. Does proving that the employer promoted Joyce Cooper, not because she was wonderful, but because they had a reason to ask Wager, advance the current discrimination claim? And, again, I think I understand your question, Ellen. I would say no. There's, I mean, let's just say that that case was still going on, that that sexual harassment claim of Joyce Cooper's was still going on. You have settlements all the time. And, yes, that could be a settlement of her sexual harassment complaint, and there is absolutely nothing wrong with that and has nothing to do with anything that the employer was claiming. Except for the assumption that you lied about it, that you didn't. I mean, in other words, my assumption in asking this question is that the employer didn't say, well, the reason we promoted Joyce Cooper was because she, we were settling a sexual harassment claim. And the reason we promoted her was because she was way better than Gigi Castro. That's the claim. So you lied. So the question is, does the lie get her by summary judgment or help get her by summary judgment? It depends, does it not, if there was discrimination to start with. The first thing that has to be shown, I think, is what you're saying, is there was discrimination against her. And then, it's only then that the pretext aspect comes in. And if there was a question on pretext, a question of fact, it wouldn't make any difference if there was no discrimination shown in the primary, in the initial case. That's correct. So I guess that's, I guess I'm just trying to say, is that your argument? Well, in essence, yes. Thank you. Okay. I think the Court has covered the issues of whether discreet acts are part of a hostile work environment. And I don't want to go into that. I have one last kind of technical question. Is there any case law about when you're applying Morgan, and if you're allowed to bring a bunch of old evidence in about things that happened in the past to inform the motive question, presumably there would be four or three evidence questions, right, about what can you bring in and what can't you bring in. And at what point is that ruling made? I mean, the district court here didn't seem to think you could rely on that evidence. So we didn't really go back over any of the old evidence and decide what he would admit and what he wouldn't admit. Do you wait to trial to do that? Do you do a summary judgment? What do you do? Well, I think that you, I don't think it's, if your question really is do you need to send it back for the district court to be making determinations, I would say no. We can just assume that all the evidence that's there would come in if it were pertinent, and we can just decide if it's pertinent or it helps her, but we don't have to worry about whether there would be evidentiary determinations made as to whether it would be excluded at trial for other reasons, like was too prejudicial, even though it, even if it were relevant. Well, I certainly don't think that you need to send it back to the district court for that. I mean, I think that there's some things where you can say that, you know, no jury could reasonably find that these things are relevant to the hospital work environment. I mean, one of the things you can say. We should just worry about relevance, and if there were a trial, some of it might not actually come in. So she's just getting a better deal by us looking at everything, some of which might not come in. Well, you can't do that. That may be right. I don't know. You can't do that. But I think, as I said, that there's some things that, you know, and you have to say, is a jury going to reasonably find these things to be part of the hospital environment? No, I understand. And I don't think you need to send it back to the district court for that. Okay. So, I mean, in essence, and, again, I think that the court has indicated this, but what the case really boils down to is that you have a claim over a promotion that Castillo did not get in April of 1999. And, I mean, she might be personally affronted by this non-selection and continue to feel that she feels bad about prior non-selections. But the thing is that her personal hurt over these prior non-selections are not what creates a hostile environment, and it doesn't create a triable issue of fact with regard to the April 1999 non-selection. And what I would urge the court to do, really, is to reject the spaghetti approach that I think that the appellant has. You said that three times, and I'm getting hungry. What is the spaghetti approach? Well, I would say, and I actually think it's been described by the Ninth Circuit, actually, in an opinion. But in essence, you throw enough up on the wall, and maybe some of it's going to stick. But the thing is that you have to look at it. I mean, you take Morgan, and you have to remove some of these things. You have to parse out what the claim is. So based on that, I don't think that there's anything here that is anything that would show that there was any discrimination or retaliation based on a prohibited fact. It's really a shotgun report. Well, we can call it that, too. And therefore, I urge the court to affirm summary judgment. Or spaghetti fired out of a shotgun. Well, maybe it's a string theory. I was just thinking, today is December the 7th, and it marks the anniversary of two happenings. One is the attack on Pearl Harbor. And two, it's my 37th anniversary at the federal court. Congratulations. I've been sitting here a long time hearing about spaghetti and shots. Hearing what? Spaghetti and shots. You've had a lot of spaghetti. I've never had spaghetti. I've never had it. This is new. That's why this job is so fascinating. You learn something new every day. I can give you the citation to that case. Just give me the recipe. Just give me the recipe. Okay. All right. Your Honor, I'll just try to hit on a couple of points real quickly. Looking at the 1999 nonpromotion and putting aside the whole Joyce Cooper business for just the moment. The whole what? Joyce Cooper. Just looking at the retaliation aspect of that. The Porter case says that retaliation is a pattern of antagonism following protected activity, and that can give rise to an inference of retaliation. And causation, the question of causation, whether there's a causal connection, requires an inquiry into the motives of the employer. And that, of course, is a factually based question that I think should be reserved for the jury. But in this case, I don't think there's any doubt that there was a pattern of antagonism going back years. We have the discrimination claims going back to 77 to 81 on the race and the non-transfer to San Diego. But beyond that, we have repeated instances over the years where she is reminded by supervisors, various supervisors, that she's a troublemaker and this is going to cause problems in her career. Well, is that a protection class, troublemakers? I think this goes to the retaliation and the fact that there's a pattern of antagonism because she is viewed as a troublemaker by the agency. They tell her she's a troublemaker in 88. They tell her that it's going to cause a hard time in her career. In 94, she's told not to file another complaint. In 95, she's pressured into signing this declaration regarding Ms. Contreras, another person who was making a protected claim. In 1997, when the agency is looking for a precedent-setting case on a particular issue and she finds one, her supervisor I'll tell you one thing about her. She's tough. She is tough. And she's persistent. And she's stuck with the agency for 25 years. And you're pretty tough, too, but you're way over your time. Thank you, Your Honor. Okay, thanks. You know, one thing I would mention. You're relying on the Porter case for the hostile work environment. And yet in that case, Porter must show that she was subjected to verbal or physical conduct of a sexual nature. So you just can't rely on hostile work environment to show it. You've got to show some discrimination against her. Right. And there was also retaliation in that case as well, I believe, that they spoke about, Your Honor. So that is in essence your claim is that she is being discriminated against because she had brought these other matters before. And so they're retaliating against her for bringing what? For being a troublemaker. They're retaliating against her because she repeatedly and consistently filed complaints based on various non-selections. And the evidence of that is what? That just because over a period of time she'd filed a lot of stuff? Right. She had been labeled by the agency as being a troublemaker as a result of her filing these protected claims. And for that reason, they were not going to promote her. They were not going to give her the fair consideration that she deserved. And the evidence that that was the reason was what? Well, I think that it can be inferred from the record. And I think that what the cases say is that when there is a pattern of antagonism where she's told over and over and over again over the course of years that you're a troublemaker, it's going to hurt your career, we're not taking any precedent-setting cases from you, these kind of comments ranging from 1977 all the way up to the 90s. Okay. I have your point. Any inference? Thank you, Your Honor. All right. Next. Okay. This is Higginbotham v. Cambra. Good morning, Your Honors. I'll try not to deal with spaghetti and instead get right to the meatballs of this case.
judges: Hug, Pregerson, Berzon